IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILDER CHIROPRACTIC, INC. d/b/a
MADISON CHIROPRACTIC-EAST, a
Wisconsin corporation, individually and as the
representative of a class of similarly-situated
persons,

       Case No.: 8:17-cv-00973-SDM-AAS

    Plaintiff,

v.

STYMCO TECHNOLOGIES, LLC, a Florida
limited liability company, and JOHN DOES 1-
5,

    Defendants.
_____/

**DEFENDANT STYMCO TECHNOLGIES, LLC's MOTION SEEKING
AN ORDER OF DISMISSAL FOR FAILURE TO STATE A CLAIM,
SUMMARY JUDGMENT AS THERE ARE NO MATERIAL FACTS OR LAW
IN QUESTION OR, ALTERNATIVELY, AN ORDER STRIKING PORTIONS
OF PLAINTIFF's COMPLAINT**

    Defendant, STYMCO TECHNOLOGIES, LLC, moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) for a dismissal of Plaintiff's Complaint for failure to state a claim on the basis that the Plaintiff cannot state a claim that will entitle it to relief under valid law. Alternatively, STYMCO TECHNOLOGIES, LLC requests that this Court consider this Motion as a Federal Rule of Civil Procedure 56 summary judgment as permitted by Rule 12(d) and enter judgment in its favor on the basis that Plaintiff cannot avoid the affirmative defense of consent and it allegation for failure to include an opt-out provision is not supported by valid law. Finally, and in the alternative, STYMCO TECHNOLOGIES, LLC prays that this Court strike excerpts of the Plaintiff's complaint pursuant to Rule 12(f) on the basis that the excerpts are not supported by valid law.

1

I.   **RELEVANT FACTS**

Defendant, STYMCO TECHNOLOGIES, LLC, hereinafter "STYMCO", is a Florida limited liability company licensed in the State of Florida to provide durable medical equipment to patients in need. Durable medical equipment, commonly abbreviated as "DME", includes electrotherapy units/supplies, conductive garments, and orthopedic bracing which assist in pain management.

On February 3, 2017, STYMCO entered into an established business relationship with Plaintiff, WILDER CHIROPRACTIC, INC. d/b/a MADISON CHIROPRACTIC-EAST, hereinafter "WILDER", when STYMCO's account executive called WILDER at 12:09 p.m. *See* Affidavit of Sarah Hass (hereinafter "Haas Affidavit") ¶ 5(b). WILDER, its agents or staff verbally and voluntarily provided STYMCO with WILDER's facsimile number. *See* Haas Affidavit ¶¶ 4-5. STYMCO's account executive faxed an informational packet to WILDER at 2:54 p.m. *See gen.* Informational Packet (Dkt. 1-1).

II.  **STANDARDS**

   A.  **WILDER'S COMPLAINT MUST ALLEGE FACTS ESTABLISHING A RIGHT TO RELIEF BEYOND A SPECULATIVE LEVEL.**

STYMCO's Rule 12(b)(6) Motion to Dismiss establishes that WILDER's Complaint fails to raise enough facts to convey a reasonable expectation of a valid cause of action. To state a cause of action, WILDER must allege more than labels, conclusions and a formulaic recitation of their causes of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, WILDER must plead factual allegations that establish a right to relief beyond a speculative level, i.e., that there is a reasonable expectation that discovery will reveal the non-existence of consent and a lawful obligation to provide opt-out notice. *See id.* As explained *infra*, WILDER's

Complaint fails to meet this minimum standard because it alleges only a conceivable, not a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

> **B. IN THE CONTEXT OF THESE ISSUES, THERE IS NO GENUINE ISSUE OF MATERIAL FACT OR LAW THAT CAN PRECLUDE SUMMARY JUDGMENT.**

Summary judgment is appropriate if the Movant demonstrates that there is no genuine issue of material fact and the Movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must establish that a genuine issue of material fact exists. *See* Fed. R. Civ. Pro. 56(e). The materiality of facts is to be determined in the context of the legal issues involved. *See Lower Brule Sioux Tribe v. S.D.*, 104 F.3d 1017, 1021 (8th Cir. 1997). The facts in dispute must be outcome determinative to defeat a motion for summary judgment. *See id.* WILDER cannot establish any fact, let alone a material fact, that will avoid judgment based on the fact that it consented to receive the alleged facsimile.

## III. ARGUMENTS & AUTHORITIES

DEFENDANTS are entitled to a dismissal or a summary judgment in this action in this action because STYMCO and WILDER had an "established business relationship", WILDER consented to receive the informational packet via fax, and the faxed informational packet is not an advertisement. STYMCO requests that this Court take dispostive action against WILDER's Complaint for the reasons set forth herein.

> **A. THE JUNK FAX PREVENTION ACT OF 2005 PROVIDES THE CONTEXT FOR THIS ACTION'S LEGAL ISSUES.**

As the District Court of the District of Columbia recently noted "Believe it or not the fax machine is not yet extinct." *Bias Yaakov Valley v. FCC*, 936 F. Supp. 3d 1078, 1079 (D.C. Cir. 2016). As long as the traditional fax[1] remains, the Junk Fax Prevention Act of 2005, hereinafter

---

[1] A "traditional fax" uses telephone networking as compared to an internet fax which uses internet protocol to send a facsimile of a document to the recipient. As known as "e-fax", online fax, "web fax" and "email fax", internet

3

"JFPA", a component of the Telephone Consumer Protection Act of 1991, shall persevere. The JFPA was enacted to protect the public from bearing the costs of unwanted advertising such as ink, paper, telephone transmission services and equipment. *See* Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 68 FR 44144-01, 2003 WL 21713245 (Jul. 3, 2003) ¶ 133.

> The JFPA prohibits any person from
>
> [using] any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, and unsolicited advertisement unless—
>
> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
>
> (ii) the sender obtained the number of the telephone facsimile machine through—
>
> (I) the voluntary communication of such number, within the contest of such established business relationship, from the recipient of the unsolicited advertisement, or
>
> (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,
>
> except that this clause …; and
>
> (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),
>
> except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E)

---

faxing offers consumers benefits such as (i) it requires no additional hardware or software; (ii) requires no additional telephone line; (iii) provides paperless communication integrated with email; (iv) provides the ability to send and receive multiple faxes simultaneously; and (v) provides reduced phone cost and lower maintenance costs than traditional faxing. *See* Wikipedia "Internet Fax", https://en.wikipedia.org/wiki/Internet_fax (last visited Jun. 6, 2017)  Faxes sent via the internet do not fall within the JFPA or the FCC's regulation. *See* Rules & Regulations Implementing the Telephone Consumer Protection ACT of 1991, 68 FR 44144-01, 2003 WL 21713245 (Jul. 3, 2003) ¶ 134.

4

47 U.S.C. § 227(b)(1)(C).[2]  In simplified terms, the JFPA applies to (i) unsolicited facsimiles (ii) made outside of an established business relationship or a business relationship that has not otherwise been terminated.[3]  WILDER cannot establish a cause of action because its complaint does not and cannot allege facts sufficient to meet these elements.

### 1. STYMCO Established a Business Relationship with WILDER on February 3, 2017 Therefore the JFPA Does Not Apply.

To state a claim for a violation of the JFPA, the alleged contact cannot be the product of an established business relationship with the fax recipient.  Here, WILDER's complaint fails. Section 227 defines an "established business relationship" as it is defined in Code of Federal Regulations 64.1200 and expands the definition to include business entities.

> The term *established business relationship* for the purposes of [ ] this section on the sending of facsimile advertisements means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding projects or services offered by such person or entity which relationship has not been previously terminated by any party.

47 C.F.R. 64.1200(f)(6); *see* § 227(b)(1)(C).  In 2005, Congress specifically revised Section 227 to ensure that the judicially created affirmative defense was codified in the JFPA.  *See* Rules & Regulations Implementing the Telephone Consumer Protect Act of 1991, Junk Fax Prevention Act of 2005 ("2006 Rules"), 71 FR 25967-01, 2006 WL 1151584 (May 3, 2006) at *25967.  The Federal Communications Commission[4] ("FCC") adopted Regulation 64.1200(f)(6)'s definition of "established business relationship" in all material respects.  *See id.* at *25968-69.

---

[2]  All references to the United States Code use the 2017 version unless otherwise stated.
[3]  Section 227(b)(1)(C)(iii) authorizes the use of an opt out provisions in unsolicited advertisements to avoid liability.  The opt-out provision is inapplicable here as it applies only to unsolicited advertisements as discussed fully in Section III(A)(3) *infra*.
[4]  The FCC was tasked with the implementation of the requirements of the Telephone Consumer Protections Act which includes the JFPA.  *See* § 227(b)(2).

As the FCC recognized "an EBR [established business relationship] exemption will allow companies to communicate effectively with their customers". *See* In re Rules & Regulations Implementing the Telephone Consumer Protect Act of 1991, Junk Fax Prevention Act of 1991, 21 F.C.C.R. 3787, 2006 WL 901720 (Apr. 6, 2006) at ¶ 11. To develop these relationships, parties can initiate the relationship with a mere enquiry. *See* 2006 Rules at *25969. Thereafter, one party's provision of a fax number to another in response to the enquiry reflects a willingness of the provider to receive faxes – establishing a voluntary two-way communication. *See id*. at *25968. Consent need not be in writing; the FCC explains that it is also "permissible for the recipient to provide to the sender its facsimile number orally over the telephone". *Id*. Once an established business relationship forms, the relationship will remain effective until terminated by either party. *See* 2006 Rules at *25969.

In this action, STYMCO representatives contacted WILDER at 12:09 p.m. and introduced "Dr. Wilder" to STYMCO's preferred provider program. *See* Haas Affidavit ¶¶ 3, 5, Informational Packet Cover Sheet (Dkt. 1-1). STYMCO's telephonic enquiry and WILDER's provision of its fax number established a voluntary two-way communication sufficient to establish a business relationship precluding liability under the JFPA. WILDER's Complaint fails to state a cause of action and must be dismissed or, alternatively, summary judgment should be entered in STYMCO's favor.

### 2. STYMCO's Informational Packet Is Not an Unsolicited Fax Advertisement and Is Not Prohibited by Section 227(b)(1)(C).

a. STYMCO's informational packet was a solicited fax.

Consent is an affirmative defense to a JFPA claim. *See Jennings v. Continental Svc. Grp., Inc.*, __ F. Supp. 3d __, 2017 WL 90069 (W.D.N.Y. Mar. 17, 2017)(holding that though

consent is an affirmative defense Defendant was not entitled to a judgment on the pleadings as alleged). An "unsolicited advertisement" is

> Any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's *prior express invitation or permission*, in writing or otherwise.

47 C.F.R. 64.1200(f)(15). In comparison, "solicited advertisements" are "fax advertisements sent with the recipient's prior express invitation or permission." *Bais Yaakov of Spring Valley* 852 F.3d at 1082. As established, WILDER provided express permission to receive fax advertisements during a 12:09 p.m. telephone call of February 3, 2017. Since STYMCO obtained WILDER's consent to fax information, STYMCO has an affirmative defense of consent to WILDER's JFPA claims. WILDER fails to state a claim on which relief can be granted or, in the alternative, cannot establish a material fact that would entitle it to relief as a matter of law.

    b. STYMCO's informational packet is not an advertisement as it lacks the requisite commercial element.

  STYMCO faxed an informational packet that does not meet the definition of "advertisement" to establish liability under the JFPA. "An advertisement is any material that promises the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." *Sandusky Wellness Ctr. v. Medco Health Solutions, Inc.*, 788 F.3d 218, 222 (6th Cir. 2015)(finding that pharmacy benefit manager's informational fax listing medications available in chiropractic patient's health plans was not an advertisement because it lacked the commercial aspect of an ad). To be commercial in nature, the advertisement must relate to commerce or present profit as a primary aim. *See id.* Mere reference to a commercial entity does not by itself make a message a commercial message as long as the primary purpose of the communication is to relay information. *See* 2006 Rules at *25973, *Sandusky Wellness Ctr.*, 788 F.3d at 225. STYMCO's informational packet does just

7

that – it relays information to chiropractors regarding products that their patients (who are also STYMCO's clients) use.

The Sixth Circuit addressed a similar query as to the nature of a fax in *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc*. There a Defendant circulated a facsimile to health care providers that provided a list of medicines available to Defendant's healthcare plan members. *See* 788 F.3d at 220. The fax requested that the health care providers consider prescribing Defendant's plan-preferred drugs to lower the medication costs for the providers' patients. *See id.* The Court noted that the fax did not solicit business from the health care providers. *See id.* The Court determined that the facsimile was not directed to the Plaintiff to establish business opportunities but provided information regarding services available to Defendant's own clients; therefore, it did not meet the "commercial" requirement of the definition of advertisement. *See id.* at 222. The Court snubbed Plaintiff's argument that any facsimile that "makes known" a good's or service's quality must be an ad. *See id.* at 224. Finally, the Court noted that the mere fact that a fax sender may gain a future, ancillary and hypothetical benefit does not convert and informational communication into a commercial solicitation. *See id.* at 225.

Like in *Sandusky*, STYMCO's informational packet neither seek to make a profit from nor seeks an actual or potential profitable commercial transaction with WILDER. STYMCO sought to sell no goods or services to WILDER; instead, it provided information regarding the products that STYMCO already provided to patients. Though the information advised WILDER of the quality of STYMCO's products, the averment was not intended to sell WILDER products. Instead, it provided information as to a method STYMCO uses to facilitate the distribution of product to joint clients thereby providing convenience. *C.f. Sandusky Wellness Center, LLC*, 188

8

F.3d at 220 (finding facsimile proposing benefit of lower costs to sender's and recipient's clients was not an advertisement). Indeed, as the informational packet advised STYMCO would not make a profit from WILDER's participate but, instead, would ultimately pay WILDER for services rendered to STYMCO's clients. Following the principles of *Sandusky*, the fax on its face indicates that its sole purpose is informational. As such it is not an "advertisement" and cannot be the basis of liability under the JFPA.

This Court should grant STYMCO's request for dismissal or its motion for summary judgment.

### 3. THE FCC'S REQUIREMENT TO PROVIDE A NOTICE OF OPT-OUT ON SOLICITED ADVERTISEMENTS OR AN ADVERTISEMENTS SENT PURSUANT TO A BUSINESS RELATIONSHIP IS UNCONSTITUTIONAL, THEREFORE WILDER CANNOT OBTAIN A REMEDY FOR ITS CLAIM.

WILDER's Complaint alleges that STYMCO violated the JFPA by failing to include an "opt-out notice" on the informational packet. *See* Complaint ¶¶ 19(h), 27-28, 32. Though Sections 227(b) and (d) requires unsolicited advertisements to contain an opt-out provision, the plain text of the requirement does not extend to solicited fax advertisements. *See id.* Instead, WILDER's allegations are based on FCC rules and regulations that have been deemed unlawful.

When the FCC adopted the 2006 Rules, it unilaterally expanded the opt-out requirement to "require that *all solicited* facsimile advertisements contain a[n opt-out] notice." 2006 Rules at *25969 (emphasis added). FCC Commissioner Ajit Pai noted that the extension "expose[d] businesses to billions of dollars in liability for failing to provide detailed opt-out notices on messages that their customers have specifically asked to receive." *In re Anda, Inc.*, FCC 14-164 (Oct. 30, 2014) *dissenting opinion*.[5]

---

[5] Commissioner Pai highlighted the matter *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013) *writ of certiorari denied* United States Supreme Court 13-486, wherein an attorney provided his fax number and consented to receiving faxes waiting to prey on small businesses. Like in this action, when the Plaintiff received a fax he had consented to

9

The District of Columbia Court of Appeals considered whether the FCC can require businesses to include opt-out notices on solicited faxes in *Bias Yaakov of Spring Valley v. FCC*. In the form of a consolidated appeal, the Court determined that the FCC's rule exceeded its authority such that the rule was unlawful as addressing solicited faxes. *See* 852 F.3d at 1079. The clear language of Section 227 requires *unsolicited fax advertisements* to contain an opt-out notice; the statute neither requires *solicited fax advertisements* to obtain opt-outs nor authorizes the FCC to require opt-outs on *solicited faxes*. *See id.* at 1082. The FCC requirement of opt-out provisions on solicited faxes is unlawful. *See id.* at 1083.

In the matter before this Court, there is no question that STYMCO sought and received consent from WILDER to send STYMCO's informational packet. *See* Haas Affidavit ¶¶ 4-5. As the FCC had no authority to require an opt-out on solicited faxes, WILDER's claim seeking damages for failing to include an opt-out provision on its informational packet cannot state a cause of action. The claim must be dismissed or judgment must be entered in STYMCO's favor.

### B. IN THE ALTERNATIVE, WILDER'S ALLEGATIONS IN PARAGRAPHS 17-24, 27-28 AND 32 MUST BE STRICKEN AS THEY ARE NOT BASED ON VALID OR APPLICABLE LAW.

The Federal Rules of Civil Procedure authorize a Court to strike any redundant, immaterial, impertinent or scandalous matter in a pleading. *See* Fed. R. Civ. P. 12(f). Paragraphs 17-24 27-28 and 32 of WILDER's Complaint alleges redundant, immaterial,

---

receive that did not have an opt-out provision, the Plaintiff filed a class action seeking damages of up to $48,127,000 in a predatory fashion. *See Nack v. Walburg*, 715 F.3d 680, 682 (8th Cir. 2013) *In re Anda, Inc.*, FCC 14-164 (Oct. 30, 2014) *dissenting opinion*. The Plaintiff appealed the district Court's grant of summary judgment against him. *See* 715 F.3d at 682. Begrudgingly, the Eighth Circuit revered the district Court's summary judgment on the basis that the issue regarding solicited faxes had not properly been presented then authorized the district Court to stay the matter. *See id.* at 687. The Eighth Circuit lamented "Our reversal today, therefore, places the parties back before the district Court where Walburg faces a class-action complaint seeking millions of dollars even though there is no allegation that she sent a fax to any recipient without the recipient's prior express consent." *Id.* at 682. The *Nack* case and many like it were stayed until the resolution of a District of Columbia Circuit consolidated appeal, *Bias Yaakov of Spring Valley v. FCC*, addressing the issue. *See St. Louis Heart Ctr., Inc. v. Athenahealth, Inc.*, Case No. 4:15-cv-01215 (E.D. Mo. May 27, 6016).

impertinent or scandalous matter. Paragraphs 17-24 rely in whole or in part on Connecticut General Statutes Section 52-570c which is inapplicable law within the State of Florida.

Likewise, Paragraph 27 asks this Court to determine that the STYMCO is civilly liable for damages based on an imaginary section of the JFPA namely Section 227(b)(D)(ii). WILDER asserts that it has a legal basis for opt out notice requirements because of the FCC's report and order "In the Matter of Rules and Regulations Implementing the Telephone Consumer Protect Act, Junk Prevention Act of 2005", 21 F.C.C.R. 3787, 2006 WL 901720, which is nothing more than a rule proposal. Plaintiff's cited authority does not reflect the rules of the FCC. In fact, the applicable rules are published at 71 FR 25967, 2006 WL 1151584 as "Rules and Regulations Implementing the Telephone Consumer Protect Act, Junk Prevention Act of 2005" which became effective on May 3, 2006. The section clarifies that the past version cited by WILDER had been denied in part, granted in part and dismissed in party. *See* 71 FR at 25977. Indeed, even a cursory review of the two documents illustrates that the rules and regulations have been materially changed from the 21 F.C.C.R. version relied on by WILDER. As such, the pleading sections are redundant, immaterial, impertinent or scandalous, will likely cause confusion to a jury and should be stricken.

Finally, Paragraphs 19(h), 27-28, and 32 should be stricken from the Complaint if it is not dismissed or terminated by a summary judgment. These paragraphs address opt-out provisions on solicited fax advertisements is based on rules and regulations that have been determined to be unlawfully enacted by the FCC. *See Bais Yaakov of Spring Valley*, 852 F.3d at 1083. Allowing the Paragraphs 19(h), 27-28, and 32 to remain in the complaint would surely confuse the issues and actual rules that are the subject of this litigation.

STYMCO requests that this Court strike Paragraphs 17-24, 27-28 and 32.

## IV. CONCLUSION

In conclusion, Defendant, STYMCO TECHNOLOGIES, LLC, prays that this Court dismiss the WILDER's Complaint and its individual causes of action with prejudice. Alternatively, STYMCO TECHNOLOGIES, LLC requests that this Court enter summary judgment as to the all or part of Plaintiff's Complaint. Finally, should the Court allow an amendment or decide not to enter a dispositive order, STYMCO TECHNOLOGIES, LLC requests that this Court strike Paragraphs 17-24, 27-28 and 32.

June 7, 2017

/s/ Lee W. Atkinson
Lee W. Atkinson
Fla. Bar No. 340375
7624 Bald Cypress Place
Tampa, Florida 33614
Leeatkinson337@gmail.com
Trial Counsel for Defendants

I HEREBY CERTIFY that the foregoing Motion has been electronically filed by using the CM/ECF system which sends a notice of electronic filing and an image of the document to the all parties registered. There are no parties to this action other than those registered with CM/ECF.

/s/ Lee W. Atkinson